Investigation of Balance, Mr. Poulham for the appellant, Mr. Tobin for the appellate. Before we start, I'd just like to note that this is the first day and the first case that Judge Walker will hear as a member of the D.C. Circuit. We look forward to serving with him for many years. Because it is his first day, counsel, please go easy on him. Thank you, Judge Garland. Good morning, and may it please the court, Thomas Poulham for the FBI. I'd like to reserve three minutes for rebuttal, please. So the central question in this case is whether the common law provides a means of evading FOIA's carefully balanced scheme by offering access to statutorily protected information that is only before a court because of a FOIA lawsuit. It has long been accepted that when the government cannot fully justify its withholdings on public record, it may submit an ex parte declaration for the court's in-camera review. This procedure allows the government to defend itself without disclosing the very material it intends to keep secret. That purpose would be undermined and FOIA's balance upset if the common law could be used to compel disclosure of that information, even when FOIA does not. Mr. Poulman, haven't we already held in Metro Life that FOIA itself does not preempt the common law? I don't think so. I think what was at issue in MetLife, as I understand it, was a more general argument that FOIA kind of, or I'm sorry, that FOIA wholesale displaces the common law. Here we have a more narrow argument that- And in Leopold, we held that unless the statute expressly says that the information must be sealed, it doesn't preempt. So what section of FOIA says that ex parte filings are always sealed? Well, I think there's two provisions to look at in FOIA. One is A4B, which provides for the in-camera review of the underlying documents. It provides for it, but it doesn't say anything about it permanently staying that way. This is a problem we discussed in Leopold, that even where sealing is permitted, the question is whether the common law is displaced with respect to unsealing. What language, other than the permission of in-camera proceedings, are you relying on? Well, I think the exemptions themselves and the fact that the district court has jurisdiction only to disclose information that's improperly withheld, which in turn depends on the application of the exemptions. This court in Hayden said that requiring the district court to provide on public record information that is exempt, it said in that case that would violate Exemption 1, and that's why the court- That was information that was held by the executive. Well, in Hayden, it was specifically talking about the contents of an ex parte affidavit, and it said requiring the filing of that information on the public record would violate Exemption 1. This court has also kind of given broad effect to FOIA's exemptions with respect to a GLOMAR response, saying that this is what's needed to effectuate the exemptions. So I think it would not make sense or be compatible- Well, the GLOMAR response simply says we're not able to confirm or deny. The GLOMAR response itself is not sealed. The GLOMAR response just permits the government to not reveal under FOIA if it's FOIA exempt. But the GLOMAR filing isn't itself forever sealed. That's right. But I think what we're looking at is the access to information that is protected by statute, and I don't think it's consistent with FOIA to say, well- What statute protects it? The FOIA itself and also the National Security Act. So if you lose on the proposition that FOIA itself protects it because merely providing for in-camera proceedings doesn't forever protect it, what aspect of the National Security Act protects it? The language of the National Security Act is an obligation for the or successors or related thereto. It doesn't say anything about the courts. And then Leopold, again, we said it has to say something about the courts. Same in MetLife. Well, I'd like to get back to FOIA in a minute. But with respect to the National Security Act, the Supreme Court construed that statute in Sims, and it said that Congress had deliberately chosen to give control over the disclosure of protected by that statute to the Director of National Intelligence and had specifically chosen not to give courts the ability to compel disclosure. And it offered several reasons for that. One was that the government needs to be able to provide the most secure representation of confidentiality that it possibly could. And it said that compelled disclosure by a court could have a devastating impact on the ability of intelligence agencies to perform their duties. Is this information classified? No, this information is not classified. Why isn't it classified? Information is classified under the executive order, zipping down all the way to confidential if it harms in some degree the national security. Is the fact that you haven't classified this an acknowledgement that there's no injury to the national security? No, not at all. And I don't, well, I think we can look at Sims to describe or to understand the harms that can be caused by the release of non-classified information relating to intelligence sources. None of the information in addition in Sims was classified. The Supreme Court nevertheless said that the forced disclosure of an intelligence source could have a devastating impact on intelligence agencies. It said that even the risk that a court could order the disclosure of information relating to a source could deter sources from coming forward and providing information to the government. So I have two questions about that. One, that sounds like an argument for why those redactions should not be unsealed, not an argument for why the declaration itself isn't a judicial record subject to the common law can be overturned and in individual situations by a strong interest of the government, which you express in the way that you just did. But I'm still interested, why isn't this classified? If the national security agencies are obligated to protect this, have they violated their obligation by not protecting it? No, so the underlying information that this that was the purpose of the Archie Declaration was to explain why certain redactions that had been made to one of the memoranda was classified. And it was classified on the basis of pertaining to intelligence sources. So the Archie Declaration described that information. It did so in terms that was not itself classified, but that information nevertheless relates to intelligence sources. And the Supreme Court explained why even innocuous information, when combined with kind of other pieces that a foreign intelligence entity might have, could lead a foreign entity to discover the identity of an intelligence source. And what the Supreme Court was doing in Sims was saying, you know, this is an inquiry that just should not be undertaken by courts because they don't have the expertise necessary to identify which disclosures. The specific question in the Sims, I'm just going to read it to you, was whether the Freedom of Information Act requires the agency to disclose. That's correct. That was the question. It wasn't about the common law. No, but the Supreme Court was explaining what Congress was doing through the statute, what the statute in fact did, and what it was intended to do. And that reasoning applies equally to disclosures under the common law as it would to disclosures under FOIA. All right, I'll let my colleagues have a shot. I just have a question. Is the Archie Declaration still in the possession of the court, or was it returned to DOJ? I believe the court has a copy of it. To my knowledge, it was not returned, but I'm not 100% sure. It was filed with the court, and I don't know that the declaration itself was returned. If it were returned, would that affect the application of the common law for access to judicial records application? I don't think so. I don't think that necessarily turns on whether it's physically in the possession of the court or not. Many times, exhibits or documents are given to a court for a time and then returned. Clerk's office does not always hold on to everything that might be considered a judicial record. Okay. And then, much of your argument, you fault the district court for not applying enough attention or given enough deference or respect to national security. The district court said at a number of junctures in its decision that it was giving great weight to the asserted national security interests, but that the government just hadn't explained itself. Couldn't explain why this was covered by the National Security Act, why it implicated intelligence sources and methods. And then, in large part, said that the reasons the Hubbard factors were struck against the government was because the government didn't even argue a lot of the factors and hadn't given it any material to work with. So, what are we supposed to do with an abuse of discretion review in that setting? I mean, with respect, I think the district court went wrong in a couple of ways here. It said it would give weight to the congressional judgment, but then it said that the government didn't do anything to address the strength of the interest at play. But the fact is that Congress had determined the strength of the interest at play through the statute. But that's not how, I mean, even under FOIA itself, Exemption 3, courts do have the authority to decide whether it's actually triggered by a particular document. And oftentimes, the government will help us to understand that. But the government, you know, I don't think Exemption 3 has ever been interpreted to say all the government has to do is invoke it. And the court says, good, we're done. That's not your position, right? No, no. Okay, that's what the court here said. I've looked and you haven't told me what to do. Well, I don't think the district court said it wasn't covered by the National Security Act. What it said is that it wasn't sure why secrecy was important here. And that's on JA-65. And that's the precise inquiry. Well, what it said is, look, it's not self-evident why secrecy is important. And then it said, perhaps there's something here that is superficially innocuous to the untrained judicial eye. But if you piece it together with other things, it would be important. And then said, the FBI, however, has provided no such rationale. And so the FBI hasn't given any basis for concluding that there's anything in here that actually merits protection. And in fact, never even invoked Exemption 7e, but not 3. No, but it invokes specifically the National Security Act, which in the context of this case, the only relevance of that statute was as an Exemption 3 withholding statute. And the district court never took issue with the assertion that this information related to intelligence sources. And I think it's self-evident from the Archie Declaration itself, which, when explaining why this information is classified, redacts two categories of information that are embedded within discussions of a source of an intelligence source. Indeed, in paragraph 12— Well, you say it's self-evident, but the district court said in terms, nor is it self-evident. It said it's not self-evident why secrecy is important. That's a different inquiry from whether information relates to an intelligence source. So there can be information that clearly relates to an intelligence source, as in paragraph 12 of the Archie Declaration, where it says, the revelation of the confidential source's name would identify the confidential sources redacted. That redaction clearly, I think, just from the face of it, relates to the confidential source. What the district court said is, I'm not sure why this information should be secret. But again, that's the inquiry that Sims said a court doesn't have the expertise to undertake, and it's distinct from the inquiry of whether information relates to an intelligence source. But you're saying anything that follows the end of that sentence is necessarily automatically going to be protected. Clearly, there are things that could follow that sentence that would not be, that could end that sentence, that would not implicate national security or intelligence sources and methods. Well, again, the standard this court has set in Larson and other cases is whether it relates to an intelligence source. And the district court didn't- And that's what the district court said you haven't shown here, is how does this relate to an intelligence source or revealing information about a source or methods? I mean, the government does this all the time. And it was just sort of striking that the district court here at least said repeatedly, you've given me nothing to work with. And so the district court, as I read the opinion, felt like it was left with a choice of either simply taking the government at its word or doing, you know, doing some sort of independent judicial inquiry. And your view is it should have just taken the government at its word? I think, absent some kind of finding that the information did not relate to an intelligence source, that the district court should not have ordered it disclosed. What do you mean relate to an intelligence source? If they said, we have intelligence sources, that relates to an intelligence source. But that's what struck me as a completely innocuous statement without further help from the FBI. Well, I mean, that doesn't relate to a specific intelligence source. This one is- Really, that's not the test. Is that your test? Well, I just think that that's a totally different- It's just not what's presented. It may be. We just don't know. That's the problem, right? You didn't- But I mean, the district court had the document, I think, just on its- Again, I believe- You've got a semicolon there, right? So it sounds like a whole new idea is coming. Only in paragraph 11, but that's all in the context of things that relate to intelligence sources. I mean, the whole point of this paragraph is to explain why information redacted from one of the memoranda pertains- You said, would identify the confidential sources job. Would job have to be protected? I know there's more words there, but would job have to be protected? I think in some circumstances, it might need to. Exactly, the FBI would have to explain those circumstances. In that case, I'm just not sure here that this falls in one of those cases. At a minimum, I mean, the district court committed other errors with respect to the Hubbard balancing test. For example, on the second factor, which deals with previous public access, it said that that factor weighed- was not in the government's favor because it had released other material. That gets matters exactly backwards. This factor asks whether previous access to the information at issue, it says that the court has said that provides a reason why it should be released in this context. But the public has never, nor had CNN as a FOIA litigant, had access to this specific information. On the first factor, the court acknowledged that there was little public interest in this specific information, which relates to an intelligent source. And I'd like to just underscore here the small amount of material that was withheld. We're talking kind of less than five lines. I believe it's around 40 words. The government disclosed all of its briefs are public. The other Archie declaration in full was disclosed. The ex parte proffer was disclosed in full. So on that first and second factor, I mean, I take your point, but the district court found that you didn't even argue the first and second factors. Now you're making some interesting arguments. But what do I do with the fact that this is an abusive discretion review and you did not make those arguments below? Well, this court has said that it is enough to put it before, to put an issue before the Court of Appeals if the district court reached it. That's a legal proposition. But in the course of abusive discretion review of a particular decision, it's not whether we can consider it or not. It's just how can we say the court abused its discretion on the basis of arguments you tell us now that were not given to the district court? Well, because we can see what the district court did and it committed errors in its reasoning. So we can't be sure that without those errors, it would have come to the same conclusion. And we can turn to other factors that there's no dispute that the government made arguments about. On the third factor, the court believed that same strength as a third party objection. And I just, I don't think that makes sense with respect to information about intelligence sources that are important to the functioning of an intelligence agency. On the fifth factor, the possibility of prejudice, I think Sims outlines the possibility for prejudice, which is that just the risk of disclosure by a court can cause a source in the Supreme Court's words to close up like a clam. Mr. Pullum, we're well over time. Do the other judges have further questions at this point? Can I just ask one, Mr. Pullum? I think you may have forfeited at the district court your FOIA exemption three argument, your argument that FOIA exemption three should preempt the common law here. I also think that CNN may have forfeited at this appellate court, their argument that you forfeited exemption three at the district court. I'm going to ask CNN the same question, but what am I, if I think both those things, what am I supposed to do with that? Well, a party certainly can forfeit a forfeiture argument. We think that the argument that whether the FOIA displaces the common law in this circumstance was sufficiently before the court, especially in the context of this case, and at a minimum, the court addressed that legal argument. As I was just saying to Judge Millett, it's a recognized exception to forfeiture that those general rules don't apply when the district court decides an issue. I think the district court did decide the issue, and we can bring it up here. But just looking at what was offered, I think the government had offered enough in the context of this litigation. It identified the relevant statute. It had made arguments that that statute was an exemption three statute. With respect to the underlying information that Archie Declaration discussed, the government had asserted exemption three over that information. Just given the way this case developed, where facts were constantly shifting on the ground, the Archie Declaration was submitted in response to an order from the district court to just provide a notice saying if anything had changed on the redactions, the government released some information and provided the declaration to say, this is why the remaining stuff can't be released. So I think in these circumstances, especially to the extent the court has discretion to consider this, I would hope that it would exercise its discretion in a way to protect information that relates to intelligence sources whose disclosure could cause some harm to that source. And that type of harm is outlined in the declarations that we provided, that sources can lose their utility or willingness to come forward. They may be retaliated against if they're uncovered. Okay. All right. We'll hear from Mr. Tobin. Thank you. Thank you, Mr. Paul. Good morning, your honors, and may it please the court. Your honors, the questions of the government really exposed the underlying issue here, and that's whether this court should deviate from its unbroken line for the last 40 years, arguably the last hundred years since the in-rate drawback case, and hold that the government does not need to show all six factors under the now standard Hubbard test. Could I ask you, I would like to pick up on what Mr. Polam was arguing. So the standard of review, which is abuse of discretion, includes according to our opinion in Leopold, if the district court misunderstood the application of the factors, that is misunderstood the law, that we review de novo, correct? The application of the law is a de novo review, that's correct. So if we could go, I want to pick up on what Mr. Polam was arguing here. I don't blame the district court for this, because our cases have not been the clearest, and many of them have not presented these precise issues. But if you go through each of the judge's applications of the factors, I have difficulty with whether they're actually what the law should be, leave aside the question of whether a law is completely clear on this or not. So the first factor that the judge applied is the need for public access. And the judge says, although the court sees little public value in the specific information that remains redacted, there is enormous public interest in the Comey memos. Now, it's my view in light of what we said in Leopold about everything being particularized. The point of the Hubbard test is that we look at particular information to be sealed or unsealed. That the issue we should be looking at is, for each of the factors, is the information that was redacted, not some larger amount of information. Is that an unreasonable view of the law that I'm suggesting here? Not entirely, Your Honor, but we also look at it as a process issue. The public interest could be colossal, or it could be quite minute in the actual redacted information. Obviously, the more important the information, the more important the circumstances, the more that probably plays. You agree that we look at the information that is still redacted, and the judge says that that information he sees little value in. Now, if we're going to believe, I mean, you want us to take the judge's view that there's not much injury to the national security. But don't we also, and I'll question that for a moment, but don't we also have to take the judge's view that there was little public value in the information that's still being withheld there? If I'm correct, all we're talking about is basically two full lines, maybe two and a quarter out of all the material that was once at issue. That's all that's left, right? Just those blacked out lines on page JA-146. That's correct, Your Honor. All right. So if I go to the next issue, which is the second factor, the judge weighs the extent of the previous public access to the documents. And here, there's been no public access to the redacted information. The judge focuses, again, I don't blame the judge for this, but I'm trying to, I think one value of this case is that we have some clarity here about the law. The judge says lots of, you know, the FBI has already released the vast majority of the declaration. That's true, but that's not the issue. It seems to me that the issue here is the extent of previous public access to the redacted information. Isn't that right? Your Honor, with respect, no. And if I could just make an extra point on part one, the need for public access is also a procedural issue. The judge made very clear that he relied on the Archie Declaration. He relied on all of it at several stages in the proceedings. There were six portions that we cited in the record where the judge relied on the Archie Declaration or the government relied on the Archie Declaration to persuade the court to grant its summary judgment in the first summary judgment in the FOIA case. The public has a great need for access to understand the underpinnings of judicial decision-making. Obviously, I understand this, having written Leopold and Met Life, but the question here is the judge basically is saying that he didn't rely on those two pieces of information because he didn't think they were important. So I'm not sure that's the right analysis, but even if you're right that that's the right analysis, the judge is saying I'm not relying on these lines. So I agree that- That's not how I read what he said was the added public interest, you know, it may not be great in light of the rest of the declaration, but he didn't say that he didn't review it or rely on it. I mean, after all, he agreed with the government initially that the entire process was covered by a law enforcement exception, exception 7A. All of that except for this part has already been released. So let me move to the third factor. So that is someone has objected to disclosure and the identity. And in Hubbard, this was a national children's, it's a different issue. Who else could object to disclosure of sources and methods other than the government? In the other cases, the concern was privacy of third parties who are concerned. Now, obviously, the sources and methods are not going to be coming to court and objecting. It seems to me that in a national security situation, the only party that really has relevant information about that is the government. And granted, Your Honor, there is really nobody else who could stand in. So there really is only, in that part of the test, there's only one party to look at. But when the government comes in and expresses its interest in an ex parte fashion, this is a case that had eight declarations and an ex parte hearing that we didn't hear about until summary judgment was rendered, exhaustive briefing, in-camera review. When the government is the party, the court has an especially heightened duty. And I know Your Honor agrees with that, especially heightened role in questioning the government and asking the questions. And our only point on factor three is that the court should consider, in the common law balance, that it has an enhanced duty to ask the government questions. And that's exactly what Judge Boasberg did. He repeatedly asked the government to establish why the information redacted from the Archie Declaration. Again, I'm trying to pick at each one of the factors rather than the sort of zeitgeist of this. And this particular factor, the judge says that because it's not a third party, the government's argument doesn't have the same strength. But I don't see how that can be the rule in a case involving national security information. Well, I think, as I interpreted that, he was saying that I have a responsibility to conduct a very much more probing review if the government is a party. Not that the government's interest is diminished. It certainly is not. CNN does not argue the government's interest. But he says it does not have. He ends up by saying, while the court takes the FBI's objection into account, it does not have the same strength as a third party objection. And it strikes me as wrong. Again, not the judge's fault, but wrong in a national security circumstance. Now, let me ask about the fourth and the fifth factors. I'm sorry, I got to get all the way to the sixth. So just bear with me. I'm going to combine the fourth and the fifth. So this is the question of intelligence sources and methods. And for this, what we have in the 6th Hardy Declaration is a statement that the information redacted on both pages reveals non-public information about intelligence methods. The FBI is obligated to protect such information under the National Security Act. So isn't that a statement both that that information does reveal non-public information about intelligence sources, and because it has to be protected in the National Security Act, that it risks harm to the national security? With respect, Your Honor, the first statement that the court said is correct. Of course, we take it at face value that the material is covered by the National Security Act. But the Hardy Declaration goes on to decline to answer parts four and five of the Hubbard test. It specifically says the FBI cannot provide any further details publicly about the still withheld information or the potential harms from disclosure. So the government expressly declined. Because such disclosure would risk those harms occurring. The FBI is explaining why it can't publicly disclose it. But it certainly had every opportunity, and the court invited it to in numerous occasions to present non-public explanations for it. Your Honor, we may not like CNN, it obviously stands for the proposition that the court should have maximum openness, that transparency serves the system. And I know the court agrees with that. That's what MetLife, Hubbard, and Leopold and League of Women Voters all stand for. But when it comes to issues of national security, the solution is not for the court to stop asking questions. The court should always be asking questions under the common law. And the government certainly had opportunities in this case to answer those questions in whatever fashion it needed to safeguard whatever interests. The judge, and I will say Judge Boasberg was very receptive. And there are notations on J42, 46, 53, 54, 56, 64 to his role. He appreciated his role in the sensitivity of national security information. But what he said when he accepted the government's rationale under Exemption 1 for a bunch of the redactions, and under Exemption 3 for a few of them, is that the government provided a plausible rationale tailored to this factual circumstance. The Hardy Declaration expressly declines to do that. The Hardy Declaration is the only place that the government has pointed to where it has met that obligation. And so it has not satisfied its burden. Let me ask about the sixth factor. So for that one, the purposes for which the documents were introduced. And the quotation is, the public's entitlement to judicial records is commensurate with the document's importance to the judicial proceeding in question. Now, the issue in this as being the single most important factor, the judge said this is the single most important factor. I totally agree that this is a relevant factor. But the idea that it's a single most important factor, the problem in Hubbard is, from the quotation is, it was the single most important factor in Hubbard. But Hubbard wasn't saying it was the single most important factor in the test. And the reason it was a single most important factor in Hubbard was sort of the opposite of the argument in this case. It was an explanation for why the information in the search warrant should be kept secret by a third party was making that argument. I think it was a Scientologist. And the reason it was the single most important factor there was that that filing would have disclosed the very information they were trying to keep secret. That's really the same argument here. So I just, I'm concerned that the court saw those words, the single most important factor and said it was when Hubbard didn't mean that to apply across the board. And even in Hubbard, the way in which it was applied would apply in the opposite way that it was applied in this case. Well, Your Honor, whether it's the single most important factor or just a factor. The fact is that the district court relied on the Archie Declaration. The district, the government asked the district court in seeking leave at ECF 23 to file the Archie Declaration ex parte. It asked to aid the court in the resolution of the exemption claims by filing the Archie Declaration. We filed the last week, Your Honor, a supplemental joint appendix. It's the transcript of the ex parte hearing that the court held. The court opened up the hearing by saying, I have reviewed the Archie Declaration and I need your help. I need further help. And by the way, that is an instance where the government provided the help, the linkage the judge needed to get over the hurdle, the hump of the argument that they were making. They were quite capable of making that argument, Your Honor. And so, you know, there are other parts. ECF 49, the district court in the original summary judgment ruling relies on the Archie Declaration of three points. And Judge Boasberg left no doubt in this ruling that at J 6263, he relied on the Archie Declaration as a fundamental document that influenced his judicial decision making. And that's where we read the argument to lie in part six. I might also mention, Your Honor. Let me let my colleagues have a chance. Please. I've taken up all the time. Thank you. I apologize. I'll jump, I'll jump in. It seems like the thrust of your argument for a lot of the factors that Judge Garland was going through is that the government should lose because it wasn't specific enough in explaining why the redacted lines should stay redacted. My worry is if they had been more specific through an ex parte in camera declaration that provided more specifics, you'd be asking for that now. You'd be asking us to unredact their explanation of why they shouldn't unredact what's now redacted. What do I do with that concern? Um, Your Honor, I, I, I can't say that we wouldn't. I think it's something that the court has to take argument by argument by argument. There is certainly a lot of litigation. CNN is involved in a lot of it in the district court, trying to unseal court records. That is not an appropriate part of the process. It would give Judge Boasberg and the other district court judges the information that they need to make the determination, however, that if that ex parte filing justifies the sealing of the Archie memorandum in this case, then in all likelihood, we would not be able to prevail either under the common law or we'd be alternatively argued in this case, the first amendment access standard, and the court would have the information that it needs to weigh. And so, um, Your Honor, that, that, that is not an unlikely scenario, um, but it is not an inappropriate one either. And it would give the district court every tool it needs to make the right decision. Well, it might explain why the, the FBI here was not more specific. They may have thought, well, for more specific, that will stay redacted under the six factor Hubbard test. But, you know, six factor tests are not the most predictable tests. And we don't know what judge will get. We don't know what panel will get. And if it were to go en banc, we don't know what the en banc. We just don't know exactly what will happen. So we're going to err on the side of not being specific in case that eventually gets under redacted. But, but since we're low on time, let me ask you the same forfeiture question that I, I asked, um, the, the FBI, uh, assume, I think they forfeited their exemption three argument in the district court. You didn't make that argument in your appellate brief that they forfeited, uh, their exemption three argument in the district court. So does that mean that you have forfeited your argument here that they forfeited their argument there? Well, we have to go back one more level deep, your honor. The exemption three argument was raised on the rule 59 E motion. The 59 E motion was denied. The judge said that they had their opportunity and they waived the argument on summary judgment. They also did not appeal. They appealed, they listed it as an item in the notice of appeal, but they did not brief any error in the rule 59 E argument. And so I think the waiver balance, if that's how the court is looking, uh, weighs heavily against the government as to whether the exemption three argument is live in this court. Your honor, if I may also just go back very briefly to your previous question, judge Garland, may I just, um, add a couple more sentences? Yes. But I want to let judge, can we let judge, see if judge Millett has any questions and then you can do that at the end. Okay. Well, I'm happy. I'm happy to have them answer yours first, if that's easier. Okay. Go ahead. Go ahead. Mr. Colvin, go ahead. Um, just to judge Walker's, um, point, um, your honor, you know, in our view, the FBI has a solemn duty to make its arguments to this court in as narrow a fashion to allow public access to judicial proceedings and under FOIA public access to agency records. We would hope that the FBI would use, um, every reflection and introspection in presenting affidavits, uh, to the court and in presenting ex parte arguments. And so if there is a chilling effect on the FBI, if they are worried about, um, exposure of ex parte information because CNN or Fox or anybody else comes in and asks for public records, I would argue that it's a healthy part of the process, that there is a common law test that this court has fundamentally and rigidly applied for the last 40 years. And that, that would, that would have a healthy impact on the process. And I have every confidence in Judge Boasberg and the other courts in this district that they will reach the right accommodation when they see the information presented to them. Right. I wanted to ask, um, let's talk about the, let's say you have, let's just assume that, uh, you filed a FOIA request for the Archie declaration, not a common law access. Um, and the district court, it's a new, whole new case. And the district court looks at the Archie declaration in camera to try to figure out, um, if exemption three or 70, uh, really applies. Um, if you, if they do apply, you agree, you couldn't get the declaration under FOIA, correct? Um, if it, if it meets the standard under FOIA for the exemption, yes. Three and 70. Could you still argue that that in-camera submission, I'm not talking about the affidavit. I'm talking about the actual in-camera submission. You could still obtain it, even though you couldn't get it under FOIA, you could still obtain it under the common law right of access. As long as the factors broke in your direction. Well, your honor, um, nobody appealed the FOIA document. I'm not, I'm asking a hypothetical here. That is, can you obtain under the common law, uh, access, uh, to right of access to judicial records, anything that isn't available under FOIA just because it was in camera. Your honor, I think there are two ways the court could go. My preferred route would be to follow the common law analysis. And if it broke down and if it broke in the government's favor on factors four or five or any of the others, then no, we could not obtain them. Um, uh, the other way that the court could go is to say that, um, as in the FEC case, uh, I think it was in Ray sealed case. The only reason the document is being filed with the court is to see if it should be sealed or unsealed. And under that case, it is not subject to, um, the hover factors, although I'm not sure what you're, I guess I'm not quite understanding your argument. I don't really want, I don't want you to tell me what the court could do. I'd like to know what CNN's position is. And is it that as soon as that, that document is filed in camera on a FOIA case, um, a complaint could be amended to say, we'd also like to now get that in camera filing under the common law right of access and what you could do. We could amend the complaint to say that I don't think there's any dispute about that. And the question is, is there any case that you can imagine in which the answer to the FOIA question and the common law access question would be different? Um, your honor, CNN believes that any document filed in a court should be, uh, analyzed under both the Hubbard test and the first amendment. So yes, it would be subject to challenge. Isn't this exactly the question that was addressed in MetLife? Mr. Tobin in MetLife, uh, the, uh, the argument was made that, uh, the right to the information, that they could seek the right to information through FOIA negated any right to, uh, receive it under, um, the common law and the court held that FOIA only applies to documents in the executive's hands. And, uh, once the executive puts them into a court filing, which is what happened in that case, it's not to the extent that court has control over the document. It's not controlled by the freedom of information act. It's controlled by the court. Assuming it's a, that's exactly right. Your honor. Yeah. But the answer is yes, it could be released and make that clear. I apologize, but that's exactly right. All right. So your position is that the in camera document itself could be released under judicial common law access standards, even if it would be withheld under FOIA under the ruling camera filing, right? Doesn't that, I'm sorry, met life didn't involve an in camera filing and cameras is very, you know, unique procedure that we have for the resolution of FOIA cases. And I'm trying to figure out if your legal position is that as soon as you invoke that process that FOIA allows for, for in camera filings, um, then immediately that document suddenly becomes available under a, both under the district court, surely couldn't order the government to release it unless it found no FOIA exemption, but if it found an, if it found a FOIA exemption, it can't order the agency to release it, but it could, the court could release it itself. Well, in met life, your honor, the documents were filed in camera under Dodd-Frank in a sealed appendix and it's still brief. And in that case, as, as judge Garland said, Sealed brief isn't, isn't the same thing as when parties seal filings all the time, right? But formal in camera proceeding is not the same thing as a sealed document. But that's what happened in the, um, uh, district court in the met life case that the documents were viewed in camera. And then on appeal, um, the party argued that it was subject or actually in a motion for access and then on appeal that it was subject to the common law test. Judge Garland and the, and the other, uh, judges on there that it could not be released under the FOIA provisions. I'm sorry, your honor. Is there a finding there? Because the Dodd-Frank there sort of incorporated the FOIA, uh, process and exemptions. And so was there a finding there that it would not be really, it would be forbidden to be released by the agency under FOIA, but it could be released by the court. There was not that specific finding. That's what I'm asking about. Okay. All righty. Um, would you agree if the information in the Archie declaration were in fact protected by exemption three, the court should not release it or it still could under the six factors? I think your honor that the, the FOIA, the finding under FOIA does not answer the Hubbard test completely. I'm just talking about exemption three here. I'm not talking about all the other exemptions under FOIA, which, you know, there's a lot of those. I'm talking about exemption three and, and to be clear, of course, national security protection under exemption three. There's a lot of exemption three statutes, but. No, I think, I think you could rejudge Bozberg's opinion to say that he assumed it fell under exemption three, but even argue whether it was. Your position, but your position is even if it's protected by the national security act could not be released under FOIA under exemption three, it can be released under the balance, put aside the forfeiture issues. It can be released under the balancing test. That's the command of the med life test. Yes. Your honor. That is our position. Okay. Thank you. All right. I know we're out of time on a rebuttal, but that's more our fault than Mr. Palms. So if you want to take two minutes, go right ahead. I'd like to make just a few points very quickly. I think judge Millett has gotten to a key problem with CNN's position here. And I think that El Sayegh, this court's case in El Sayegh indicates that when a document is before the court solely for the purpose of determining whether it should be released, that the common law doesn't apply and the consequences of CNN's position would totally undermine FOIA. We would have, it doesn't take much difficulty to imagine situations where there would be FOIA requests for all kinds of documents. The requester would say, district court, please examine them in camera to be sure. And anytime that did, the document could be released under the common law under totally different standards than what FOIA provides. The second point I'd like to make is CNN hasn't argued that the district court mistakenly accepted the ex parte declaration for in-camera review. So there's a real disconnect here between saying the FOIA litigant can't have access to this information, but after the case is resolved, a member of the public could come in and get it. I think that's a real problem with their position. And the third point I'd like to make- All right. I just don't understand that point because the FOIA litigant is also a member of the public and could always assert common law access rights. Right. But I think it's just, it's odd to think that you can litigate the FOIA case and the requester can't have access to information for the purpose of kind of a statutory claim, but then later you can apply totally different factors to release it to someone else. That seems to be not an ideal situation. And the final point I'd like to make is CNN acknowledged that it didn't dispute that this information was covered by the National Security Act. And I think that should weigh very, very heavily in these four, five, and six factors. This court said in the In Re Sealed case that where Congress passes a statute restricting an agency's ability to put information on the public record that rarely, if ever, should Hubbard factors overcome that. The district court here said that because the government's investigation was at an end, so too is the strength of the Bureau's argument. But coverage under the National Security Act, which relates to intelligence sources, doesn't depend on the existence of an ongoing investigation. All sources are protected, whether there's a current investigation or not. So for those reasons- Can I ask you a question? Yes, please. Because before the district court, the government did invoke 7E to protect law enforcement confidential sources. But now we're not hearing about 7E. We're told about the National Security Act Exemption 3. Is every FBI confidential source covered by 7E also an intelligence source covered by the NSA? Or why wouldn't, if not, then why, how do we make that jump? Well, the National Security Act specifically relates to intelligence sources. And I believe 7E relates to confidential sources in an investigation. So you could have a source in an investigation that has nothing to do with intelligence. It could be someone, you know, saw someone on the street breaking into a car. Someone's in a drug organization. That could be a confidential source without being an intelligence source or relating to an intelligence method. So I think those are- I'm just trying to understand how we got from- the government, you know, wasn't- presumably was thoughtful in all of its filing. Then it was explicit about this is a 7E confidential source for law enforcement. And it wasn't until Rule 59 in here that we suddenly heard that the same confidential law enforcement source or method that's supposedly at risk here is also an Exemption 3 one. It just strikes me as quite hard to believe that the government wouldn't have noticed when it invoked 7E whether that person was also an NSA intelligence source. So just to be clear, the Archie Declaration was describing information that was withheld under B1 as being classified pertaining to an intelligence source. So it was clear from the very beginning that that was an intelligence source material. The government also- Where was this clear that it was an intelligence source? I just got references to 7E. If we look in- In the Hardy Declaration. In the Hardy Declaration. In the Archie Declaration itself, this is on page JA-146, these redactions come from a section discussing why material in one of the Comey memos that was not requested by CNN, was requested by another party, and then dropped out of litigation. Archie is describing why this information is classified under section 1.4C of the executive order. That same underlying information in the Comey memo, the government asserted Exemption 3. This was in the first round of summary judgment briefing before it came up to this court and was remanded. So the underlying information was flagged as relating to an intelligence source. Hang on, this is- Because an Exemption 1 classified information is of an even higher caliber than an Exemption 3 NSA, and you're not claiming that the Archie Declaration information at issue here, if I heard you right in your response to Judge Garland, you're not claiming that this is classified information or an Exemption 1 eligible. And so the only jump I'm seeing is from the Hardy Declaration invoking 7E for this source methods information to Exemption 3. And now you're throwing Exemption 1 on the table, which is making things more confusing for me. I'm sorry, so I'll walk through kind of step by step.  So, one of the documents at issue, one of the Comey memos at issue had information that was classified relating to an intelligence source. Right, I understand that, and that's not what I thought. Are you saying that this Archie, I'm sorry, just because we're short on time, this portion of the Archie Declaration is speaking to the Exemption 1 information in the Comey memo? It is, it is. You can see on the heading on GA-146. Exemption 1 information. That's right, it's describing why the underlying information is Exemption 1, and it's doing that using information that would be protected by Exemption 1. Why did Hardy talk about 7E and not 3? So, just to move on to the next step, if I could. So after the Archie Declaration was filed, or with the, at the same time, rather, the government moved for summary judgment with respect to this memo that CNN didn't request. Right. And the government said this is protected by B1, and then there was a separate section of its summary judgment. I believe this is docket entry 22, something around that. There's a separate entry that says this material is also covered by Exemption 3 because it relates to intelligence sources. And it's often the case that something that's covered by B1 under Section 1.4c will also be B3 because they both relate to intelligence sources. So that was the first round. So we had already established that the underlying information is B3. Then we have the Sixth Hardy Declaration, which says that the information in the Archie Declaration is covered by the National Security Act. And it had already been litigated in this case that the National Security Act was a B3 exemption statute. So that's the connection. It wasn't just that it was a law enforcement source. There's been an ongoing claim that this underlying information relates to an intelligence source as well. Okay. I hope that that was a little more clear. I apologize. So for those reasons, we ask that the judgment be reversed. All right. Thank you all very much. And I think Judge Walker did an excellent job on his first outing. We'll take the matter under submission, and the clerk can call the next case. Thank you all. Thank you.
judges: Garland, Millett, Walker